Good morning, Your Honor. May it please the Court, Randolph Barnhouse, on behalf of the Paiute-Shoshone tribe. And welcome from New Mexico, my old stomping grounds. Thank you, Your Honor. I appreciate that. For over five decades, this Court has recognized that Indian tribes can protect their land in court, on their own, without the United States as an asset power. The Court has confirmed Congress's intent. There have been no changes in the law or in any conditions that should alter this Court's recognition of this important tribal authority. All we ask today is that this Court not abandon this longstanding, pragmatic, bright-line rule in this case. This case arises out of efforts by the City of Los Angeles in the 1940s to gain control of the Owens Valley as a water source for the City. Some of the land sought by the City belonged to the Bishop Paiute tribe. To gain possession of those tribal lands, the City took advantage of a land exchange act passed by Congress. Yet that congressional act had specific requirements that had to be met before the government could effectively transfer tribal lands. These congressional requirements were not met, yet the City took control of tribal lands nevertheless. Well, I have trouble here visualizing that how, should your client prevail, it could be granted any meaningful relief without the participation of the United States. Can you explain to me how a court might fashion a remedy for your client without the participation of the United States? Absolutely, Your Honor. All the Court need do is eject the City of Los Angeles from these lands. This is a question about the deed that the City has. That does not impact the United States in any way, shape, or form. But there was a land exchange. It wasn't a one-way street. Lands were conveyed by the United States. Yes, Your Honor. That's correct. And lands were conveyed in exchange to the United States for the benefit of the tribes. That is also correct, Your Honor. So the fee owner of those lands is the United States. The fee owner of the lands that the City of Los Angeles has, we maintain, is the United States. The fee owner of the lands that the United States was given. Okay. So you're saying that the United States can be forced to re-exchange or take ownership of something without being represented in court? Well, Your Honor, the United States, as the City recognizes, would not be forced to re-exchange those lands. In fact, the United States stands in perhaps what is the best position it could for purposes of looking at the quota, the – this deed and whether the deed is void. If we are successful – If you're successful, though, the old owner is the United States. And so whether it decided to use those lands for the benefit of the tribes, we don't even know that. Because if the exchange is declared void, then the land reverts to the United States. With title, as it was held at the time, Your Honor, which was for – in trust for the Chippewa tribe. So the lands would revert back for the use of the tribe if we are successful. Congress did everything it could to protect my client. It was – and we – everybody makes mistakes, including Federal agents. As the United States Supreme Court recognized in Puff Pabilli, the United States is just overwhelmed with these types of claims. And so to – It just strikes me, the basis of your claim is that agents of the United States did something wrong. And the winner, quote, unquote, if you're successful, is the United States. P.S. for the benefit of the tribes. But it seems like the United States as an entity, as a government, is at the centerpiece of your claim, both as to what went wrong and as to who would be the immediate beneficiary if the exchange were void. Well, Your Honor, the United States holds these lands in trust for the Bishop Paiute tribe. And as courts have recognized, that's – that's the same as the tribes owning them themselves. The United States would not be – so to the extent the United States does have an interest, its interests really are parallel with the tribe in making sure this exchange is properly effectuated. Well, maybe in that piece of it. But your claim as to what went wrong is that there was fraud and terrible wrongdoing by agents of the United States. And ordinarily, if that's the case, to the – the government would have the right and the opportunity to defend the actions of its agents. Your Honor, that's a very significant statement because the essence of our claim is not that there was fraud and terrible wrongdoing by the United States. That's something that's been generated by the city in this. If you look at the complaint, it simply stated that the – that the requirements of the Act were not met here. And that's not – Well, but then why weren't they met? Because – because there wasn't the right signature gathering – or meeting versus signature gathering and so on and so forth. Isn't that part of what went wrong? That was part of what went wrong, but that does not equate to fraud or terrible mistakes. These are the kind of mistakes that Federal agents make on a daily basis on the print pages. Well, okay. Call it innocent mistakes. Yes, Your Honor. It's still agents of the United States that made these mistakes, whether innocent or not. Yes, and agents of the city that – that took action that did not comply with congressional requirements. Okay. Well, the city's a defendant, but the other half of the problem is not a defendant. But even if the Court were to find that the United States – the agents of the United States made mistakes here, this is not a situation where Congress just took land forcibly from Indians, Your Honor. Congress did everything it could to protect my clients. This is a situation where Federal bureaucrats then didn't follow Congress's mandate. They didn't exchange land and water rights. They didn't get equal value for these parcels. And as a result, the city of Los Angeles, which was after the water, got what it bargained for. My client, the Bishop Paiute tribe, got substantially less land, and instead of having water rights that it had before the exchange, has nothing more than a paper promise to deliver water. Those are all issues that – But how do we litigate whether the United States did any – you have to show that the United States did something wrong in order to prevail, right? We have to show that agents of the United States did something wrong. All right. Agents of the United States. So how do we litigate that if the United States isn't part of the lawsuit? We would litigate that, Your Honor, in the same way that those issues were litigated in Puff Pobity or in other cases decided by this Court in the Supreme Court, where the question is not so much, is the United States liable? Because that's not the issue here. The issue is whether the Congress's mandate was met. Because if it was not, this case is – the deed is void ab initio. And being void ab initio means that title still rests with my client, which brings up another issue that was – Well, in a sense, title rests with the United States in trust for your client. But it would seem to me that the government might very well take the position, no, we don't want this land back. We made an exchange that we think we did follow the rules and that this exchange should stand. And I don't understand why they wouldn't have the right to make that argument to enforce the agreement they made with the city. Your Honor, the United States would have been in the same position in any of the four cases over the five decades that this Court has had this rule to say we don't want that land. But in each instance, this Court said because Congress has made that determination in 28 U.S.C. section 1362, that tribes can bring this type of litigation on their own without participation by the United States. And in fact, the legislative history of that section in the Senate report cited in our brief, the Senate specifically anticipated that there would be instances where there was perhaps a conflict between Indian tribes in the United States. So in 1966, when Congress passed 28 U.S.C. section 1362, it did so specifically to address these types of situations where my client's federal trustee declines to act on behalf of the client. This Court has recognized the import of that in a number of decisions, and most specifically in Fort Mojave v. France, in the Fort Mojave case. I'm sorry, it's the Fort Mojave case, where the Court said that the rule in this circuit is that tribes can bring this type of case without participation of the United States. Well, what's difficult is, of course, that in that particular case, the interest of the United States was not adverse. And it seems to me that those cases didn't decide for sure what would happen when the interests are adverse. But here, Your Honor, the district court found that the interests were not adverse. In fact, the district court held that nobody had explained how the United States would be prejudiced in any manner by continuing without its participation. And looking at the Rule 19b factors, the district court held that each one of those factors weighed in favor of the tribe, and each one of those factors weighed in favor of continuing without the United States. The only factor, this fifth factor that the district court added was, were there allegations of wrongdoing by the United States that would have made it inequitable to proceed in its absence? But the Court didn't balance the equities of Rule 19. The Court didn't even address whose equities would be involved. And as this Court, it couldn't have been the city's, because as this Court recently held in Peabody 3, if the city has an adequate claim back against the United States, which it admits it does in its response, then the city would not be prejudiced by continuing in its litigation. And it couldn't be the interests of the United States, because this litigation does not attack the validity of the exchange agreement itself. It only questions the deed. It's a simple act, an ejectment. And the United States will not be prejudiced, because if we win, then the efforts of Congress to protect this tribe will be enforced. And there will be no damages to the tribe, because we have our land back. And if we lose, no one can go back. But you've got the land back. The Federal Government will have your land. But the Federal Government, Your Honor, owns all Indian land in trust for the tribes. And the Supreme Court and this Court have recognized that. The Federal Government is back in power and back in possession, not the city of Los Angeles. Can't the Federal Government then make a decision as to what's in the best interest of the tribe and give the land to someone else? It could not do so, Your Honor, without — it could not do so without just compensation. This is property of the tribe, and it would be a taking — it would be a taking for — All right. You can make another deal like you did with L.A., and then you're back to where you started. But, Your Honor, those are the type — it potentially could. We'd have to receive compensation for that land. It couldn't just give it away without — without compensating the tribe. And those also are the type of future events or hypothetical events that this Court and others have held don't come into consideration at this stage of the litigation of determining whether the United States would be prejudiced. Counsel, how do you reconcile your position with the Supreme Court's decision in Minnesota v. United States, which appeared to say that the United States, as the owner in fee of the U.S., is a party. And then following that, we have the Imperial Granite case in which we said that the U.S. is an indispensable party to any suit brought to establish an interest in Indian land. Your Honor, this Court has consistently held that that only applies when the plaintiff is not an Indian tribe. That's why you can't have condemnation of Indian land, because a state can't try to condemn land without naming the United States. There are a number of cases, the Lee case, and most recently in the Barber case, where this Court held that that particular rule only applies if the plaintiff is not a tribe. Here it is a tribe, Your Honor. The tribe enjoys the benefits of 28 U.S.C. section 1362. And that's a critical statute, because Congress recognized many of the issues that this Court is wrestling with and said, even in instances where there's conflict, tribes need to be recognized that the U.S. simply does not have the resources to protect every interest of its tribal wards. And that, therefore, 1362 is critical to allow Indian tribes to bring actions on themselves. I notice I only have two minutes left. I'd like to reserve the rest of my time. You certainly may. Thank you, Your Honor. Good morning, Deputy City Attorney Lisa Berger, appearing for the City of Los Angeles. I can only reiterate what the Court has already said. This is not simply a matter of the U.S. having given land to a third entity and the tribe now wanting that back. This is all part of a very complex exchange agreement that affects the U.S. interest, the City interest, and the interest of other Indian tribes, not just the Paiute-Trishan tribe. At this time, what persons or entities have legal title to the lands at issue in this case? I'm sorry. I do not know the answer to that question. As far as I'm aware, it's either the U.S. or the City of Los Angeles. Could this action proceed if the United States voluntarily moved to intervene? As long as the United States was a party and was able to defend its actions back when the exchange was made and its interest now in maintaining the benefits of the bargain that it got for the benefit of all of the Indian tribes, then yes. The problem with the cases that are being cited is that none of them involve this type of give and take. It was always a give. It is simply impossible, no matter how many times the tribe may say it, to just deed back this one parcel of land or these areas of land that are in dispute and walk away. It simply can't be done. The City would have to be required for just compensation. The appellant wants to eject you, all right. Correct. And so if you were ejected and it went back to the United States in trust, they're claiming that that puts them back where they are. Is it possible that the United States in that situation wouldn't do what they wanted and then there would be no control to make that happen, or? It's certainly possible. There's really no way to know what the United States would plan. But the United States had a very specific purpose when it passed the Act and when it wanted to get better quality land with better access for irrigation, for agricultural needs than it had at the time. And it has achieved that. And if this agreement is undone, then something else will have to be redone in order to put everybody back into that advantageous position. This particular tribe may be doing well because it thinks it has water rights that will be able to provide lots and lots of money on that particular land, and that's what this is all about. But the problem is that they're not the only party involved. This is sort of the whiskeys for drinking, waters for fighting, or is that what this is? This is all about the water? That's my belief, yes, Your Honor. But they – this can't be looked at as a vacuum. There are the citizens of the City of Los Angeles that are affected because they have land taken away in the land that was given to the United States under this exchange agreement that they now have received no – or impartial compensation for. That will have to be determined as to what the just compensation for that land is. Well, potentially the land would just be re-exchanged back to where it started. Well, the tribe denies that. That is complicated. But I'd like to hear your answer to counsel's argument that 28 U.S.C. Section 1362 allows this action to proceed. It gives the federal courts jurisdiction over a federal controversy where an Indian tribe is the plaintiff. In essence, I've restated it, but – The court has jurisdiction. That's not a question here. It's – nobody is saying that the court doesn't have jurisdiction. That allows the Indian tribe to proceed as the plaintiff without requiring the United States to be the plaintiff. But here we're talking about whether or not the United States has the right to be a defendant because its interests are being involved. This is not having to do with the United States as it This has to do with the United States as the party that entered into the agreement, as the party who is accused somehow of having innocently tricked members of the tribe into signing blank pieces of paper. So, let me just say, if the only claim here against the City of Los Angeles were that the City, for its half, failed to live up to its promises in the agreement by giving only three-quarters of the land that it was supposed to give, and nobody noticed, but there's another quarter that it never lived up to, would that be the kind of suit that could proceed without the United States because it would be a claim only of some sort of wrongdoing, innocent or otherwise, by the City? Based on that hypothetical, I believe, yes, that suit would be able to proceed. But, of course, that's not at all the case that we have here. In fact, the only allegation against the City is the type of thing that perhaps a taxpayer of the City could bring saying, you know, this is in essence a sale of water and you didn't bring it before the taxpayers as required under the charter. But whether or not the City was able to negotiate an agreement that meant they didn't have to do something that protects the taxpayers of the City does not affect the validity of the agreement and certainly is not something that the Tribe has standing to even address. Their complaints have to do with the United States and how it fulfilled its requirements under the Act. And it does affect much more than just this particular part of the, there was more land that was given to the City and there is all the land that was given to the United States in trust for all of the Tribes and Indians in the Valley. And you cannot just, as one of the cases I cited said, you cannot pull one thread without unraveling the entire thing. Now, but for the fact that the statute is run, would this be the type of thing that in your view would have been appropriate under the Indian Claims Commission Act? Yes. All right. Now, but my understanding is that it's the appellant's position to be that the Indian Claims Commission Act is not applicable because it claims it has a, quote, unquote, live title claim to the land and that this, that they contend that this, it's live because the exchange occurred in violation of a statutory mandate. Can claims stay live forever or do they expire over time or what's your response to this argument? The only reason the claim is live under those terms is because they didn't bring it before the commission. The same could be said of every single case that the commission had jurisdiction to hear. That was the point it was created to determine whether or not certain rights had been extinguished or not. And if the Tribe failed to bring their claim of ownership before the commission so that the commission could determine whether or not it had been extinguished and whether they had received just compensation, then they have waived that right. That was their ultimate venue. And that would have had to occur, what is it, a five-year statute? Correct. So it would have had to occur somewhere, what, 52 years? Prior to 46, or between 46 and 51. Is it your position that a claim for essentially specific performance or ejectment or something other than money damages could have been brought before the commission, or was it limited, as the Tucker Act is, to monetary claims? No, not at all. The statutes that created the commission were very broad, and it was, in fact, intended specifically to determine issues of ownership and whether or not Indian lands had been properly given to third parties or released to the public or whatever the situation may have been. If you look at the language of the specific statutes, it is very, very broad. The reason I ask that question, I'm not sure what relevance it has to the Joinder issue anyway, but when the commission was abolished, the pending cases were sent to the Court of Claims, which is now called the Court of Federal Claims, which basically has jurisdiction over money damage claims, and which is why I asked the question what the relationship was between the old commission system and the Tucker Act. The only remedy that the commission was able to provide was money damages, and perhaps that's why the remaining cases were put into a court that dealt with money damage cases. Okay. So that's exactly my question. They are not seeking money damages here. They want land. Right. The commission was coming back. So why was this ever a commission case? I'm not sure it has any effect on the ultimate outcome, but I really have trouble following why it was a commission case to begin with. Well, it's relative to the ultimate outcome only because it is a small part of the whether or not there was an alternative forum. And as the Court found and as we have argued, the only reason there's no alternative forum is because they let that go 50 years ago, 60 years ago. The way the commission could only give money damages as a remedy, but it was designed to determine ownership issues, to determine whether land patents had been proper under the authorizing statutes and that sort of thing. And that's exactly what we have here, a question of whether or not a land exchange, an exchange of deeds was done pursuant to the authorizing statutes. So they could have decided the issue, but they couldn't have given the remedy of nullifying the exchange. Correct. They could have only given money. That's exactly correct. So it's not – while it might have been an alternative forum, it wasn't a forum that could afford the same relief that they're seeking here. No, but that's – the question isn't whether you can get the same relief in a particular forum. The question is whether or not you can bring your claim in a particular forum. And they could and should have brought this claim in that forum if that's what they wanted to do. But they had to meet the 5-year statute. They had to meet the 5-year statute. And if they were limited to money damages, then that was what Congress intended. We've heard a lot about living up to Congress's intentions. And that's exactly what Congress intended with the Indian Act. All of this – a lot of this has to be looked at in the context of what was being done at the time, back in that early part of the 20th century, to look at a lot of these issues now in the sort of more enlightened thinking of the 21st century, maybe give it a little bit of a slant that isn't appropriate. But I think, as the Court pointed out at the very beginning of these arguments, the real issue is what the United States' interest is in here, in these cases. It has an interest in defending its agents. It has an interest in defending the exchange it agreed to. It has an interest in whether or not it wants responsibility and ownership of the tribe's lands. And it has responsibility for how it wants to treat the other tribes and Indians that are now benefiting from the land that the United States received in the exchange. And all of that is put in question, even if the tribe is saying all it wants is its land back. It simply cannot be that narrow. And the United States has a right to be a party to all of – to protect all of those interests. Unless the Court has any other questions. I don't believe that we do. Thank you. Thank you, counsel. Mr. Barnhouse, you have some rebuttal time remaining. Thank you, Your Honor. I think it's a gross mischaracterization of the Indian Claims Commission Act to say that it could cover all claims. As Your Honor, you pointed out, it was just money damages for takings. It did not preclude any further Indian claims. Because if it had, then neither this Court nor any others would be hearing any of these claims today. No court has ever held that the ICCA, as this one did, simply barred all future claims. That's a mischaracterization of that. It was a statute. I agree with you on that issue. You still have the other hurdles to address. That's absolutely right, Your Honor. But it would be devastating for this Court to be the first one to say that the ICCA, as a practical matter, precludes any claims. It would be in contradiction to this Court's prior precedent in the Eighth Circuit and in the Seventh Circuit. That's just not what the ICCA was intended to do. It was to remedy past takings through the payment of money, not live title claims, for example, the type of issues this Court addresses today. No, live is – I don't understand what – why that word matters, but it seems to me that a pure taking claim is a little bit different than undoing an exchange. And I know you have problems with thinking of it as undoing the exchange, but it seems to me that those are potentially distinguishable situations. I just – they are distinguishable, because tribes were forced to decide have we lost that land forever and we're going to take money damages, or is that land still ours? And here it is still this tribe's. The city of L.A., I think, my colleague candidly admitted, this is about water for the city. This is about land for this tribe, an adequate land base for one of the largest tribes in California. And it would not require a re-exchange. I've noticed that my time has expired. It has. Thank you very much. Thank you, counsel. We appreciate the very interesting arguments from both counsel. The case is submitted.
judges: Graber, Callahan, Bea